2011 3 1 1 3 Williams against the Department of Justice and to give if you would give the council a chance to get their materials together this will take just a moment very well mr. Martin you're ready please the court the appellant has raised three points on appeal for the first point on appeal the appellant argues that the arbitrator erred and finding that there was no harmful error for the second point on appeal the appellant argues that the arbitrator and properly found that the FLE proved the termination was reasonable and I'm going to limit my discussion to these two points for the first point on appeal the appellant argues that the arbitrator erred and not concluding that there was harmful error the arbitrator specifically stated that quote the one-year investigation seemed excessive and pitifully sluggish followed by the sluggish by the agency followed by another six months of bureaucratic compunctions however the arbitrator found that there was no violation because the parties have not agreed to a hard and fast timeline and because the appellant subsequent conduct exacerbated the process while the parties are not agreed to a hard and fast timeline they did agree to timely disposition of investigations and disciplinary actions and excessive and pitifully sluggish is certainly not timely where was that agreement memorializes that in a writing that's in the collective bargaining agreement your honor section 30 D 30 C does it define what it contemplates by the term timely no your honor however it'd be our that excessive and pitifully sluggish is certainly not timely but what about the fact that that as they're attempting to do this investigation there are additional problems that that then get wrapped up in yes your honor and that was the arbitrators argument is that the subsequent conduct by the appellant was however the parties agreed to timely disposition disciplinary actions and investigations and so even though it was there was some additional charges additional conduct by the appellant they had every right in fact a contractual obligation to timely dispose of the investigation but it sets up kind of a perverse concept here that that as long as the employee keeps doing things wrong and therefore delays the overall consideration of his behavior that that that then the employee at the back end can say well you took too long correct your honor however again the parties did agree to progressive disciplinary actions in timely just just sorry timely disposition of investigations and disciplinary actions if they'd followed the collective bargaining agreement and complied with these terms they would have enforced progressive discipline charging him and discipline him for each charge as opposed to combining all three do you have any case law that says that that that's an obligation under a collective bargaining agreement written like this that you have to separate out each disciplinary infraction no your honor I found no federal case because I don't think that would have been an appeal issue for this court there were arbitrative cases which of course is not binding on this court that I cited to in my brief where that was an issue for the arbitrator well the issue of progressive go ahead I'm not seeing the exact language in article 30 that deals with this timeliness and did not have it in the record by looking at a wrong place I'm looking at age 62 it's 62 subsection C stating that the parties primarily to correct and improve behavior and then subsection D stating that the parties endorsed the concept of timely disposition of investigation and disciplinary actions those those arbitration cases you cited do make the point that that progressive discipline is is appropriate but they don't say about an obligation to address each infraction before you get to the other infraction that's correct okay however again it's our contention that the agreement was timely disposition of each infraction and according to the arbitrators own words in this case it seemed as though they were combining all as an effort to make the charges against the appellant seem more than what they were what does progressive discipline mean well the parties in the contract does not define that and certainly like that definition but it would be our assumption that for each charge the person the employee is disciplined for each charge separately as they arise as opposed to why not you progress from one to the next to the next and you take them all together one might relate to the other one might inform the other why why doesn't progressive discipline contemplate taking progressing from one step to the next and then deciding after you've been through all the steps well again your honor the parties agreed to this timely disposition of investigations and disciplinary actions what's what but if you had three if it was permissible permissible to to go from one and then two comes along and you want to see what two is it's obviously going to take longer to that if it does if you if you unwrap one after the other yes your honor I mean you can imagine a situation where there's a charge one that they're in the process of investigating and something comes up and there's a charge two and they investigate that and they determine that in charge two there really wasn't a problem they misunderstood something and that might be to the benefit of the employee because when they say well gee in that second charge which we're looking at we realized we made a mistake and that and that old so-and-so inmate was lying to us and that same inmate was the one that was blew the whistle on the first charge man we ought to go back and the employee yes your honor but in this case it did not and that's what we recognize as the harmful error in this case but the harmful error is a matter of breach of contract yes your honor a breach of the collective bargaining agreement sorry is it your position that had they acted on each infraction that that he wouldn't have been terminated because each one standing alone might not support the termination is that what you're saying your honor it was the removal was because all three charges together in the ultimate decision-maker in this case Rodney Chandler also stated that it was the repetitive behavior the fact that all three charges came to him at once that was a motivating factor for him to sustain the removal I understood you'd be making a due process type argument in your briefs as opposed to a contract breach are you shifting grounds here no your honor it's our position and if I wouldn't clear in my brief statement issue number one arbitrators finding did not violate due process constant contradicted yes your honor never screen I do constitutional due process claim in a contract yes the next point on appeal the appellant argues that the arbitrator erred in finding that the appellee proved the termination was reasonable in this case we presented three arguments in the brief first if the arbitrator failed to properly consider all relevant Douglas factors to if the arbitrator applied the table of penalties as a controlling factor and three that the arbitrator added charges that were never brought and compared dissimilar offenses to the table of penalties due to time constraints I'm just going to discuss the first argument and the first argument is the arbitrator failed to consider two very important Douglas factors in this case the first would be the consistency of the penalty with other charges against similar employees and the ultimate decision-maker in this case admitted that he did not review the scene that similar charges against other employees resulted in much lesser penalties also the second important Douglas factor the arbitrator failed to consider was the effect of the offense upon the employees ability to perform a satisfactory level and its effect upon the supervisor's confidence in the employees ability of performance assigned duties you mentioned in your brief this disregard at page a 184 where we're talking about disciplinary calendar for other folks you said that there was one of those in there that dealt with a circumstance of employee who had a relative who was related to doing in me which one was that only 184 I couldn't find that no your honor and I think what you're referring to and I noted that mistake in preparation and it's kind of upset not included but there and I don't know if I can bring this up because there was another charge it was in the disciplinary logs that I cited to in my brief for whatever reason it was not included in the appendix and it's in the record what did you tell us what it yes your honor the charge well the charge from my understanding to it yes sir the charge from my understanding was and I wasn't prepared to argue that point because I didn't know if I could address it but it was I believe a relationship with an institution which resulted in a much lesser penalty there are many cases though that say the Douglas factors don't all have to be considered that that Douglas factors are just that they're factors and not in every case they don't necessarily have to all be listed you don't have to go through the of course you don't have to address each and every Douglas factor however I believe the cases from MSPB tell us that if there are important and relevant factors those must be discussed and must be analyzed by the arbitrator and again the two would be the first one and the second one the effect of the conduct on the abilities on the employees ability to perform in his job the appellee testified that there was no evidence that the supervisors had lost trust or confidence in his ability to perform his job and in fact Scott Byer the person that proposed removal of this employee was also his supervisor who completed performance evaluations noting that his performance was a exceeds right but that was before he knew that that he was building dog cages with the prisoners and buying him fried chicken and I mean you it's hard to rely on a doesn't it it didn't take into account the behavior that then constitutes the charges we are before I address that let me make sure that I know what I'm talking about but I believe that the performance evaluations were for conduct through March 31st of 2010 which would have been conduct his evaluations after the charge misconduct so he was assessing his abilities after these charges were brought now you're into your rebuttal time would you like to save it two minutes is that correct two minutes of rebuttal if you wish to save it I'll go ahead and say that that's very well thank you Mr. Williams challenges the arbitrators decision as failing to find harmful error in order to find harmful error there has to be both error and of course there has to be harm the arbitrator found that there was no error that there was no violation of the collective bargaining agreement because although the investigation was slow the collective bargaining agreement didn't have hard and fast timelines and the pace here did not violate anything in the collective bargaining agreement particularly because mr. Williams own conduct did exacerbate the time frame within which the investigation could take place I would point out that before the investigation was actually concluded mr. Williams second second specification of misconduct had been committed by mr. Williams only ten days after the official the Office of Internal Affairs investigation being completed the third evidence of misconduct had come to light so that the arbitrator specifically found that that there was dogpiling I think is the phrase that the arbitrator used in of these charges essentially so that you could support the ultimate penalty of removal and that's exactly the prejudice that that the appellate is arguing here well the arbitrator mentioned I'm sorry so how do you how do you deal with that isn't that exactly what the timeliness of the of the the timeliness requirement was it it tending to avoid the arbitrary dimension dogpiling but not in the sense of finding that that was harm and in this case the harm basically is mr. Williams complaining that he had time to commit additional instances of misconduct this is not a case where the agency completed an investigation and then did absolutely nothing for a period of time and as time was going by they dug up a couple of other infractions this is something where during the investigation mr. Williams went ahead and committed more misconduct and more misconduct came to first of all I don't believe there's any case that precludes an agency from including more than one charge if additional instances of misconduct happened to occur while the agency's investigation is occurring so why did it take so long for the first investigation well the agency was extremely thorough they got affidavits from not only all of the inmates they got affidavits from every individual who worked at the prison who had access to that area or to as an attorney who does litigation as well as appellate argument I know that sometimes getting an affidavit from an individual can take three or four meetings that you have to identify the person you meet with them the first time you might draft an affidavit you might go back with them to make sure that the wording of the affidavit is accurate according to them and then if there are any changes you make changes so it took about four months to get a substantial number of affidavits that was in the first four months the agency continued so that was I think through June they got the first batch of affidavits then they were a few more that they got toward the end of that year December in January they were still finalizing things and then by March they were done with that investigation but in January was when I'm sorry March of the following year March of 2009 but in January of 2009 was when mr. Williams second incident of misconduct occurred so the agency began investigating that and taking affidavits from the individuals involved in that misconduct and then when the investigation was finally complete with respect to the dog cages on March 6 2009 it was only ten days after that that the misconduct involving mr. Williams relationship with the inmate sister came to light in the agency began investigating with it with the card playing incident have even resulted in any kind of investigation or discipline if the if the dog cage incident wasn't still hanging over his head possibly not but the fact is that it was and that the the agency's proposing and citing official did find that that indicated a pattern they had in fact removed mr. Williams from his position that he held at the time of the dog cage building was as foreman of the garage in charge of the garage area they took him out of that position and moved him to the construction foreman area as an interim sort of action if you well it wasn't an appealable action but it was an action to deal with the charges against him and it was when he was in this new position as foreman of the construction area that he engaged in the card playing with the inmate how can we be sure of his turn that the arbitrator here properly conducted a penalty assessment well as judge O'Malley pointed out there's there's quite a bit of precedent that says it's not necessary for an arbitrator or or administrative judge to discuss each and every time when there is argument made about disparate treatment when they say hey look other people that have done the same thing in this very prison have received less penalty ordinarily in an MSPB case you would see that subject matter discussed in the opinions well not if the arbitrator didn't find that it was something that weight heavily on the deciding official was actually questioned about the consistency of the penalty and the logs were put in what about the deciding official giving him a efficiency report after the stuff has gone on in which he still says he's a fine fellow that wasn't the deciding official I believe that was his immediate supervisor and I have to check on the time frame to see if that was indeed afterwards but the deciding official was questioned by mr. Williams attorney about the consistency of the penalty and the log disciplinary logs were put before the deciding official and he was able to identify other instances where employees were charged with similar misconduct and removed and that's in the appendix of page 714. I was just wondering myself about the arbitrator sitting there and he reaches the conclusion that he thinks that the appellant is not sincere and wanting to remain employed in the agency and that just seemed to me to be ridiculous I mean here's someone who's spent all this upset all the charges to get not fired to save their job and as with the arbitrator says well I don't think he's sincere in wanting to remain employed. I think perhaps a better way of phrasing that it did seem a little bit odd to say that someone who's trying to get their job back is not interested but I think perhaps what he meant in a better way of saying it would be to say actions if you really want to be remain employed after you're charged with this dog cage or this dog cage incident is under investigation anybody who sincerely wants to follow the rules of their employment and remain employed is going to do absolutely everything they can to dot every I cross every T follow every possible regulation and instead Mr. Williams was sitting there playing cards with an appellant. So you're saying that what the arbitrator is saying is he engaged in a course of self-destructive activity? I think that's a much better way of saying and I think that probably is exactly what the arbitrator meant. The arbitrator's discussion again it may not have you know explicitly identified the Douglas factors by factor and then discussed each factor very neatly but the arbitrator clearly discussed his position as a law enforcement officer and how his conduct and his ongoing conduct was not indicative of someone who was aware of the obligations attendant to that and the seriousness of the misconduct with which he was charged. Thank you. And now Mr. Martin Rebuttal. Thank you Your Honor. Just a few points going back the arbitrator did identify the potential harm in this case as may well represent an attempt by the agency at dogpiling upon the dog cage builder pun intended I guess in an effort to secure the termination by cumulatively charging the grief and for various offenses simultaneously to create a weighty effect upon the oversight tribunal. So that is what what happened in this case and as far as procedures stating that you specifically cannot add different charges that that's true that's not in the collective bargaining agreement but again the purpose of that agreement with the timeliness and the progressive discipline is again to keep from this from happening what happened in this case where somebody is hit with all these charges again apparently to create a weighty effect on the oversight tribunal. As far as the consistency of the penalty the decision maker in this case Rodney Chandler admitted that he had not even reviewed the disciplinary logs before making this decision. So as far as whether he was making an accurate decision with that regard again he admitted he hadn't even seen these for the institution. But it's not a question of whether they knew they were being consistent it's it's a question of whether they actually were consistent. I would agree with that. And final point is regarding the statement from the arbitrator that it didn't appear as this employee wanted to keep his job and it was really more his self-destructive activity. If you look back the two charges the two subsequent charges were very minimal. I mean the card-playing incident which we don't have in our argument sufficient evidence to prove that that conduct even occurred. There were cards on the table the supervisor walks in there's a dispute as to whether he even had cards. Well we can't we can't question whether it occurred that's a factual finding that the arbitrator made correct? Yes your but I'm going towards the seriousness of such a penalty here. But in the subsequent conduct of failing to report that his wife's stepbrother who is a strange was an inmate at another institution again is not a serious charge nor misconduct in this case. Very well. Thank you. Thank you.